UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                            CASE NO. 8:20-cr-118-T-35CPT

JAMES ALEXANDER

**UNITED STATES' RESPONSE IN OPPOSITION TO
JAMES ALEXANDER'S SECOND MOTION FOR
<u>RECONSIDERATION OF CONDITIONS OF RELEASE</u>**

The United States opposes the defendant's second motion for reconsideration of this Court's detention order. Doc. 26. To support his release, the defendant relies on the assertion that there has been a recent COVID-19 outbreak at the Pinellas County Jail, the pretrial facility where he currently is housed. This Court has already determined that no condition or combination of conditions will reasonably assure the defendant's appearance at trial and that the defendant poses a risk to the safety of others and the community. Doc 12. The recent discovery of COVID-19 does not mitigate this Court's findings or support the defendant's release from custody, and this Court should deny his second motion.

**BACKGROUND**

The defendant is charged with two counts of making threats against law enforcement. Doc. 13. These threats included direct messages to specific Plant City Police Department officers. In the case of one of these officers, the defendant also contacted a family member of that officer. As a result of the threats made against them, the officers made numerous changes to their lifestyles in order to protect themselves and their family.

On more than one occasion, the defendant was admonished by law enforcement and by a judge. Despite these admonishments, the defendant's threats against law enforcement continued and escalated in violent rhetoric. At the time of his arrest on federal charges, the defendant admitted to sending threatening messages to law enforcement, stated to law enforcement that police officers' lives do not matter and said that it is not illegal to kill a law enforcement officer.

In finding that detention was appropriate, this court made the following findings, among others: the evidence against the defendant is strong, the defendant's threats have escalated to claiming he will kill a law enforcement officer and that is not illegal to do so, and the defendant has continued to make these threats despite state court admonishments. The defendant also has

mental health issues and a history of substance abuse. None of those factors have changed since the defendant was detained.

On March 24, 2020, the defendant filed a motion for reconsideration of his conditions of release, based on his concern that he may contract COVID-19 while in custody. Doc. 18. On April 22, 2020, this Court denied the defendant's motion, stating in part:

> "The potential for COVID-19 exposure exists everywhere. Pinellas County Jail has taken significant measures…to prevent an outbreak at its facility…the facility screens all new detainees, isolates any detainees who show any symptoms, employs a team of medical professionals, and has greatly limited in person visits by others at the facility."

Doc. 26.

Now, the defendant seeks pretrial release again, citing pre-existing health conditions not cited in his previous motion, namely high blood pressure, anxiety and depression. *See* Doc. 42 at 2. The defendant also asserts that he is needed at home to care for his mother. *See* Doc. 42 at 3. This assertion was previously made in the defendant's first motion for reconsideration. *See* Doc. 18 at 2.

## MEMORANDUM OF LAW

This Court should deny the defendant's second request for release because the continued detention of defendants like James Alexander is necessary to ensure public safety and his appearance for court.

### A.   Legal Standards for Pre-Trial Detention

The Bail Reform Act of 1984 governs when defendants will be released on bail or detained pending trial. *See* 18 U.S.C. §§ 3141–42. A defendant must be detained pending trial when, after a detention hearing, a judicial officer finds that "no condition or combination of conditions will reasonably assure" (a) the appearance of the defendant, and (b) the safety of any other person or the safety of the community. 18 U.S.C. § 3142(e)(1). The judicial officer need only make one of these findings—either risk of flight or danger to the community—to detain the defendant pending trial. *See United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). In making these findings, the judicial officer considers such factors as the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community posed by the defendant's release. 18 U.S.C. § 3142(g).

The rules of evidence do not apply in a pretrial detention hearing, and the parties may make their case by proffering evidence, subject to the discretion of the judicial officer. *See* 18 U.S.C. § 3142(f); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987). And this court has "substantial latitude in determining whether pretrial detention is appropriate." *King*, 849 F.2d at 487.

Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing *and* that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." (emphasis added).

**B.      Defendant's Detention Remains Appropriate**

Having conducted an extensive detention hearing, this Court has already considered these factors and found sufficient evidence to detain the defendant. Doc 12. Again, none of those factors has changed since the defendant was detained. The COVID-19 pandemic affects all citizens—not just those who are incarcerated—and has no bearing on whether conditions of release will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(f).

Nothing about COVID-19 materially changes the defendant's incentives to flee and his danger to others. The defendant's opinion and feelings towards law enforcement has not changed such that he no longer poses a risk to the law enforcement community if released. Given the heightened restrictions being placed on citizens, the defendant's feelings towards the law enforcement community may be aggravated even more if released.

The community is now more vulnerable due to COVID-19 than it was when this court originally ordered the defendant detained. There are more people at home. First responders and law enforcement officers are focused on the outbreak. In contrast, the defendant poses the same danger he did at the time of the original detention order.

This Court may consider the defendant's "physical and mental condition," 18 U.S.C. § 3142(g)(3)(a), but it too remains unchanged. Likewise, there has always been the potential for the spread of infectious disease in a detention facility. Detention officials have substantial experience ensuring that viral outbreaks do not occur at their facilities and recognize the unique threat posed by the transmission of viruses inside a jail. Therefore, these facilities employ longstanding policies and procedures to ensure an outbreak does not occur of many serious diseases, such as HIV/AIDS, MRSA, sexually transmitted diseases, viral hepatitis, tuberculosis, the common cold, and seasonal influenza. The defendant asserts now that he suffers from high blood pressure, anxiety and depression. None of these health conditions warrant his release from custody, nor do these conditions put him at a higher risk of contracting COVID-19.

### C.    Procedures in Place at the Pinellas County Jail

Pinellas County Jail currently houses 2,223 inmates and employs 1,050 staff members. As of July 29, 2020 Pinellas County Jail has had a total of 32 confirmed COVID-19 cases involving inmates. Of those 32 cases, 12 are considered currently active positive cases. An additional 50 staff members have tested positive for COVID-19. Of those 50 cases, 13 are considered currently active positive cases. In response to the recent spread of COVID-19 outside the facility, officials have taken the following preventative measures:[1]

- Since February 28, 2020, the jail has been screening all new intakes into the facility upon arrival

- If a new intake shows any symptoms of COVID-19, that intake is taken into one of the state-of-the-art negative-pressure isolation cells in the jail hospital

- If a new intake does not show any symptoms of COVID-19, that intake is still kept with their arrival group in an isolated wing for 14 days, where they are checked daily for signs or symptoms, before being released into the general population

- The jail has reduced its population by 1,000 inmates

- Attorney visits are by video only

- Sanitation carts are located throughout the facility

---

[1] Further, the Bureau of Prisons has established a comprehensive set of precautionary measures to limit the risk of COVID-19 transmission into, and inside of, prisons across the country. *See* Federal Bureau of Prisons, Updates to BOP COVID-19 Action Plan: Inmate Movement, available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last updated Mar. 19, 2020).

- Disinfectant fogging machines are being routinely used throughout the facility

- All non-essential individuals are banned from entering the facility

- All staff and inmates have been issued face masks

- Inmates are required to wear face masks at all times outside their housing area

- Staff are required to wear face masks at all times while on duty

Finally, when a case of COVID-19 is confirmed at the facility, the facility has the capacity to address it. The facility employs a team of medical professionals and provides round-the-clock medical services. The facility is equipped to provide medical isolation when required. By virtue of his being in a detention facility, the defendant is in the presence of medical professionals at all times. In the event that the defendant becomes infected with COVID-19, he will be quarantined, monitored, and receive any needed treatment, consistent with the CDC guidelines.

While the COVID-19 virus is new, health claims by detainees are not. Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). In this case, the defendant has not made a factual record that his needs will not be met while detained.

**D.     Any Release Should Be Conditioned on a Health Screening**

Finally, if this Court is inclined to grant the defendant's motion, the defendant should not be released into the community if he is exhibiting any signs of COVID-19. Instead, the United States Marshal and the Pinellas County jail should be granted the discretion to hold the defendant if he exhibits symptoms. As a result, the United States respectfully requests that the following language be included in any release order:

> As a condition precedent to release, the defendant shall submit to screening for COVID-19 by the Pinellas County Jail and/or the United States Marshals Service. If the defendant is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19, the defendant shall not be released to the public because of the danger the defendant poses to the community.

> Should the defendant not have symptoms consistent with COVID-19 at the time of his release, the defendant shall submit to screening for COVID-19 as directed by the Pretrial Services Office. Should the defendant then or thereafter exhibit symptoms consistent with COVID-19, the defendant shall remain in quarantine or isolation as directed by Pretrial Services in a form directed by Pretrial services, including self-isolation or self-quarantine.

## CONCLUSION

The fact that a new virus exists is not grounds to release the defendant or any of the other thousands of incarcerated persons in the United States. For the foregoing reasons, this Court should deny the defendant's second motion for reconsideration of this Court's detention order.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:     */s/ Candace Garcia Rich*
        Candace Garcia Rich
        Assistant United States Attorney
        Florida Bar No. 027792
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:   (813) 274-6000
        Facsimile:     (813) 274-6358
        E-mail:   Candace.rich@usdoj.gov

**U.S. v. James Alexander**                    **Case No.** 8:20-cr-118-T-35CPT

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2020, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a

notice of electronic filing to the following:

Kathleen Sweeney, Esquire

*/s/ Candace Garcia Rich*
Candace Garcia Rich
Assistant United States Attorney
Florida Bar No. 027792
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail:   Candace.rich@usdoj.gov