UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:20-cr-118-T-35CPT

JAMES ALEXANDER

### UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum and requests that this Court sentence the defendant to a guideline-range sentence. In support thereof, the United States submits the following:

**I.  Background**

In March 2020, a federal grand jury in the Middle District of Florida returned a two-count indictment charging Alexander with sending threatening messages to do violence to two Plant City Police Department officers, G.B and D.H., in violation of 18 U.S.C. § 875(c). Doc. 13.  On June 17, 2020, this Court accepted Alexander's guilty plea and adjudicated him guilty of these offenses. Doc. 41. Alexander's sentencing is scheduled for September 10, 2020.

**II.  Presentence Investigation Report**

On August 27, 2020, the U.S. Probation Office issued its Final Presentence Investigation Report (PSR). Doc. 49. Alexander's applicable guidelines range for the underlying offenses is 37 – 46 months imprisonment

and a period of supervised release of not more than three years. PSR ¶¶ 105, 107.

### III.   Argument for a guideline-range sentence

A guideline sentence is necessary here due to the seriousness of the offense, the need to deter criminal activity, the need to promote respect for the law, and the importance of protecting the public. *See* 18 U.S.C. § 3553(a).

Beginning in October 2017 and continuing through January 2020, Alexander repeatedly made online threats against the law enforcement community, specifically targeting G.B. and D.H. Threats directed at G.B. and D.H. began in October 2017, after an acquaintance of Alexander's was killed by G.B. and D.H. in a justified officer-involved shooting. Alexander's statements on social media were clearly designed to threaten G.B. and D.H. and place them in fear. Alexander stated in part: "They killed an unarmed civilian and they need to die." PSR ¶ 8.

In response to these threats, local law enforcement responded to Alexander's home. Alexander admitted to law enforcement that he did indeed threaten to kill law enforcement officers. Alexander also stated that although he would not kill an officer, he would beat one up. PSR ¶ 9. Despite being confronted by law enforcement for his online threats, Alexander continued to threaten G.B. and D.H. In fact, Alexander's behavior escalated.

In May 2018, Alexander targeted G.B. on Facebook Messenger with direct threats, putting G.B. in fear for himself and his family. Alexander threatened G.B. in part: "I will beat your ass for killing my friend last year," "Meet me at a bar called finish line saloon in plant city right now," "So I can beat your gay ass," and "I will beat your ass so bad once I get my hands on you." PSR ¶ 10. Not content with just threatening G.B. directly, Alexander also sent direct messages to G.B.'s sister demanding that G.B. respond to his online threats. PSR ¶ 11.

G.B. felt so threatened by Alexander that he filed a Temporary Injunction against Alexander, which was made permanent at a hearing in June 2018. At that hearing, Alexander again admitted to making death threats against law enforcement. Again, Alexander was admonished, this time by the Court, for threatening law enforcement. PSR ¶ 12.

Despite being admonished by the Court and previously having been spoken to by law enforcement, Alexander's threats continued and again escalated. In January 2019, Alexander began posting general threats on various Facebook pages concerning law enforcement. Alexander posted in part: "It's going to be fun to kill a cop" and "I will kill a cop someday and get away with it." PSR ¶ 13. At the same time he was posting these threats, Alexander directly targeted D.H. on Facebook Messenger stated "You are

going to die this year." PSR ¶ 14. Just two weeks after directly threatening D.H., Alexander continued his threatening posts on Facebook stating in part: "I will kill a cop one day" and "I can't wait to kill a cop this year." PSR ¶ 15.

Throughout 2019 and continuing into 2020, Alexander repeatedly posted threatening messages on his own Facebook page and Facebook pages dedicated to law enforcement. As recently as January 2020, Alexander continued to post threatening messages directed to G.B. and D.H. stating that "Plant City gang members with badges murdered 2 of my friends and if I ever see them without there badge and costume on I will end there life like they did to my friends." PSR ¶ 18.

These threats were taken very seriously by both G.B. and D.H., who both felt their lives and their family's lives were in immediate danger. In addition to obtaining a permanent injunction against Alexander, G.B. took the additional measure of selling his family home of nine years. G.B. also made his personal information confidential on various public websites. PSR ¶ 22. D.H. has altered his daily habits regularly to avoid taking the same path to and from work, and other locations D.H. frequented. When in public with his wife, D.H. is always looking over his shoulder, concerned for the safety of himself and his wife. PSR ¶ 23.

The defense will likely argue at sentencing that much of what Alexander posted on social media was protected free speech and while some of Alexander's offensive posts are in fact protected speech, what this ongoing, years' long fixation with law enforcement illustrates is Alexander's obsession with doing harm to law enforcement, and specifically wanting to kill G.B. and D.H. What is particularly disturbing is that Alexander was not deterred from engaging in this behavior even after being confronted by law enforcement in his home and then later by the Court. As time went on, Alexander only escalated his threatening behavior, turning his attention to directly threatening D.H. and the greater law enforcement community.

In arguing for a downward variance, the defense relies on Dr. McClain's diagnosis of ASD as a major contributor to the commission of these crimes. The mitigation provided by the defense simply does not warrant any downward variance from a guideline sentence, much less a downward variance of 30 months, as requested by the defense.

Whether or not Alexander suffers from ASD does not change the fact that he knew right from wrong when he committed these offenses. On two separate occasions, Alexander was confronted with his wrongdoing, he admitted his actions, and then continued to engage in the exact same behavior repeatedly and for an extended period of time.

Sentencing Alexander to a time-served sentence of seven months does not deter future criminal behavior by Alexander or any other like-minded individuals. Additionally, it does not protect the public. Alexander has shown that he is not deterred by admonishments from law enforcement and the Court for this criminal behavior. A guideline sentence would adequately punish Alexander for the crimes he has pleaded guilty to and also finally deter future criminal behavior. By deterring future criminal behavior with a guideline sentence, G.B. and D.H. as well as the greater law enforcement community will be safer upon Alexander's eventual release.

## IV. Conclusion

Alexander's sentence should account for the scope of his criminal conduct, engaging in repeated death threats against G.B. and D.H. His sentence should also acknowledge the harm he has caused G.B. and D.H., putting them both in fear of immediate harm to themselves and their families. Further, a guideline sentence will promote respect for the law, by holding Alexander accountable for his actions directed at G.B. and D.H. Unlike Alexander's prior contact with law enforcement and the justice system, a guideline sentence will deter future criminal behavior and protect the safety of the public. For the aforementioned reasons, this Court should sentence Alexander to a guideline sentence.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

*/s/ Candace G. Rich*
Candace G. Rich
Assistant United States Attorney
Florida Bar No. 0027792
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Candace.Rich@usdoj.gov

U.S. v. James Alexander				Case No.  8:20-cr-118-T-35CPT

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Kathleen Sweeney, AFPD
Defense Counsel

*/s/ Candace G. Rich*
Candace G. Rich
Assistant United States Attorney
Florida Bar No. 0027792
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Candace.Rich@usdoj.gov