```
 1              IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                       TAMPA DIVISION

 3

 4   UNITED STATES OF AMERICA,      )
                                    )
 5                 Plaintiff,       )
                                    )
 6                                  ) Case No.
            vs.                     ) 8:20-CR-00118-MSS-CPT-1
 7                                  )
                                    )
 8   JAMES ALEXANDER,               )
                                    )
 9                 Defendant.       )

10

11

12   _____

13         SENTENCING HEARING (taken via Zoom videoconference)
             BEFORE THE HONORABLE MARY S. SCRIVEN
14               UNITED STATES DISTRICT JUDGE

                     SEPTEMBER 30, 2020
15                       10:04 A.M.
                       TAMPA, FLORIDA
16   _____

17

18

19

20

21         Proceedings recorded by mechanical stenography,
     transcript produced using computer-aided transcription.
22   _____

23              DAVID J. COLLIER, RMR, CRR
                FEDERAL OFFICIAL COURT REPORTER
24           801 NORTH FLORIDA AVENUE, 7TH FLOOR
                   TAMPA, FLORIDA  33602
25
```

1   **APPEARANCES:**

2

3   **FOR THE GOVERNMENT:**

4

5           *Candace Garcia Rich*

6           United States Attorney's Office

7           400 North Tampa Street, Suite 3200

8           Tampa, Florida  33602

9           (813) 274-6000

10

11

12  **FOR THE DEFENDANT:**

13

14          *Kathleen M. Sweeney*

15          Federal Public Defender's Office

16          400 North Tampa Street, Suite 2700

17          Tampa, Florida  33602-4726

18          (813) 228-2715

19

20

21  PROBATION:    Wilmarisa Martinez

22

23

24

25

```
 1                   P R O C E E D I N G S
 2                    – – – o0o – – –
 3              THE COURT:  Call the case, please.
 4              COURTROOM DEPUTY:  Court calls Case Number
 5     8:20-CR-118-MSS-CPT, United States of America versus
 6     James Alexander.
 7              Counsel, please state your appearances for the
 8     record, beginning with counsel for the Government.
 9              MS. RICH:  Good morning, Your Honor.  Candace Rich
10     for the United States.
11              THE COURT:  Ms. Rich, your video is muted.
12              MS. RICH:  I'm having connection issues all of a
13     sudden.
14              THE COURT:  We also have someone on the phone at
15     434-8193.  Who is that?
16              MS. SWEENEY:  Your Honor, this is Kathleen
17     Sweeney.  That is Mr. Alexander's mother, who would like the
18     opportunity to address the Court during our portion of the
19     sentencing.
20              THE COURT:  All right.  Ms. Rich, you're not able
21     to come onto video?
22              MS. RICH:  I'm showing up on video on my screen.
23     I'm not sure -- I have my video on.  I'm not sure --
24              THE COURT:  You're there but you're frozen, unless
25     that's a photograph.
```

```
 1            MS. RICH:  No, it shouldn't be a photograph, it
 2   should be a live feed.  I'm not sure -- I'm in a room with
 3   law enforcement.  I can switch to one of their computers,
 4   which may have a better picture, if you can give me a
 5   moment.
 6            THE COURT:  Yes, ma'am.
 7            MS. RICH:  Can you see me, Your Honor?
 8            THE COURT:  Yes, I can.
 9            All right.  Please state your name for the record.
10            MS. RICH:  Candace Rich for the United States.
11            THE COURT:  And for defense?
12            MS. SWEENEY:  Good morning, Your Honor.
13   Kathleen Sweeney on behalf of Mr. Alexander.
14            THE COURT:  Please swear the defendant.
15            COURTROOM DEPUTY:  Mr. Alexander, please raise
16   your right hand.
17            Do you solemnly swear or affirm, under penalty of
18   perjury, that the statements you give in these proceedings
19   will be the truth, the whole truth and nothing but the
20   truth?
21            THE DEFENDANT:  Yes.
22            COURTROOM DEPUTY:  Please state and spell your
23   name for the record.
24            THE DEFENDANT:  James Alexander.  James,
25   J-A-M-E-S.  A-L-E-X-A-N-D-E-R.
```

1          THE COURT:  Mr. Alexander, you're under oath, sir.

2    You must give truthful statements.  If you give false

3    statements, you face penalties of perjury, false statement

4    and obstruction.  Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  At the same time, it is not my purpose

7    to induce you to give false answers or mislead you, so if

8    you don't understand something that I'm saying to you or if

9    you need to speak with your lawyer, ask for clarification or

10   ask for a chance to speak with counsel.  Do you understand

11   that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Mr. Alexander, on May 28, 2020, you

14   pled guilty to Count One and Two of the indictment which

15   charged you with threats affecting interstate commerce, in

16   violation of 18 United States Code Section 875(c).  The

17   Court has already adjudicated you to be guilty based upon

18   the plea that you entered in front of the magistrate judge,

19   and now it is the stage in the proceedings where it's my job

20   to decide what your sentence will be.  I make that decision

21   by talking to you, your lawyer and counsel for the

22   Government and reviewing the submissions the parties have

23   made on their behalf in advance of this hearing.

24         Has the defense had an opportunity to review the

25   presentence report, Ms. Sweeney?

```
1              MS. SWEENEY:  Yes, Your Honor, we have.

2              THE COURT:  Any objection to its factual accuracy?

3              MS. SWEENEY:  No objection as to the factual

4    accuracy, Your Honor.

5              THE COURT:  Any objection to the guideline

6    calculations?

7              MS. SWEENEY:  I -- not to the guideline

8    calculations, but I do have some other objections.

9              THE COURT:  Yes, ma'am.

10             MS. SWEENEY:  Objection -- as to paragraphs 53 to

11   56, we'd object to the narratives being part of the

12   presentence.  They're taken merely from probable cause

13   affidavits and are unreliable.  They can impact designation.

14   Alternatively, I don't know that *Shepard* documents have to

15   be used, but these are not considered *Shepard* documents.

16             Along that same line, paragraph 63 and 64 list

17   under Other Arrests petitions for injunctions.  Petitions

18   for injunctions are not arrests and those should also be

19   removed from the presentence.

20             THE COURT:  You have background noise, I believe,

21   behind you, Ms. Rich.  Is that in your office?

22             MS. RICH:  Your Honor, I apologize.  It may be --

23   I'm going to remove my name from -- I'm going to leave on

24   the screen -- that should clear that up, any background

25   noise from my other laptop.  I apologize.
```

1          THE COURT:  So paragraph 53, did Probation pull

2     this from a Shepard's document?

3          You're muted.

4          PROBATION:  Yes, Your Honor.  The paragraphs

5     included in -- paragraphs 53, 54, 55 and 56 include

6     information from the Information, that is a *Shepard*

7     document; however, paragraphs 55 also includes the

8     information from the BOP violation of probation affidavit,

9     and 56 includes also the arrest affidavit information, but

10    that's in addition to the *Shepard* document.

11         THE COURT:  So paragraph 53 is information that

12    comes from the information within the *Shepard* document?

13         PROBATION:  Yes, ma'am.

14         THE COURT:  Ms. Sweeney?

15         MS. SWEENEY:  Your Honor, I don't believe that the

16    charging Information in and of itself is sufficient to

17    support this narrative.

18         THE COURT:  Do you have that document,

19    Ms. Martinez?

20         PROBATION:  Yes, Your Honor, we have the

21    Information.

22         THE COURT:  Can you tell me what it says.

23         PROBATION:  I'm sorry.  I don't have it printed

24    out.  I have it in my drive.

25         THE COURT:  Is it attached to the PSR?

```
 1                    PROBATION:  It is not, Your Honor.
 2                    THE COURT:  Okay.  Can you pull it up?
 3                    Ms. Sweeney, do you have it with you?
 4                    MS. SWEENEY:  Your Honor, I was never provided --
 5         I don't believe I was ever provided a copy.  I'm not sure of
 6         that.
 7                    THE COURT:  (Inaudible.)
 8                    MS. SWEENEY:  I'm sorry, Your Honor?
 9                    THE COURT:  How do you know this is not in the
10         Information?
11                    MS. SWEENEY:  I'm sorry, Your Honor.  I do not
12         know that.
13                    THE COURT:  I thought that's what you just said.
14                    MS. SWEENEY:  I said I don't believe that what's
15         contained in the Information is sufficient to support the
16         narrative.  I don't know that the Infor --
17                    THE COURT:  How do you know that?
18                    MS. SWEENEY:  I don't know that.
19                    THE COURT:  Ms. Martinez?
20                    PROBATION:  Yes.  I'm searching the documents,
21         Your Honor.  Just one second, please.
22                    This is Hillsborough.
23                    MS. SWEENEY:  Your Honor, as it relates to what --
24                    THE COURT:  Ms. Sweeney, one second.
25                    PROBATION:  Okay, Your Honor.  Okay.  I have the
```

```
 1    Information for the case mentioned in paragraph 53.  It
 2    reads:  Count One, James Arthur Dominguez-Alexander, on the
 3    24th day of February, 2015, in the County of Hillsborough
 4    and State of Florida, did unlawfully actually and
 5    intentionally touch or strike the person of John Alexander
 6    against his will and in doing so did intentionally or
 7    knowingly cause grave bodily harm, permanent disability or
 8    permanent disfigurement to said John Alexander, and during
 9    the commission of the offense James Arthur
10    Dominguez-Alexander carried, displayed, used, threatened to
11    use or attempted to use a weapon, to wit an axe, handle or
12    bat.  That's for case -- and it has a Count Two,
13    Count Three.
14              MS. SWEENEY:  Your Honor --
15              THE COURT:  One second.  The obstruction of
16    justice by offering to do violence to a deputy, where
17    is that in the Information?
18              PROBATION:  Okay.  Let me read.  That would be --
19    I'm reading the other count, Count Two.
20              Count Two reads:  James Arthur
21    Dominguez-Alexander, on the 24th day of February, 2015, in
22    the County of Hillsborough and State of Florida, did
23    knowingly and willfully resist, obstruct or oppose Deputy T.
24    Smith of the Hillsborough County Sheriff's Office in the
25    lawful execution of a legal duty or in the execution of
```

1   legal process by offering or doing violence to said Deputy

2   T. Smith.  That's Count Two.

3            THE COURT:  Yes, ma'am, Ms. Sweeney?

4            MS. SWEENEY:  Your Honor, you're right, and

5   I apologize for wasting the Court's time on this.

6            As it relates to these paragraphs that include an

7   Information, I don't object to that.  The portions I'm

8   objecting to is the -- are facts taken from affidavits that

9   I believe to be unreliable, and that only appears in

10  paragraph 55 and 56, so I withdraw the objections to 53 and

11  54.

12           THE COURT:  All right.  The Court will allow the

13  BOP affidavit information to remain in the paragraph 55, as

14  the Court considers the BOP affidavit, which I presume was

15  sworn out by a probation officer, to be reliable and he did

16  have his probation revoked, having been found guilty, and so

17  the Court would allow that to remain.

18           Paragraph 56, I would direct Probation remove the

19  second paragraph, which is based upon the arrest affidavit.

20           PROBATION:  Okay, Your Honor.

21           THE COURT:  And then there were injunctions that

22  were pursued --

23           MS. SWEENEY:  In paragraph sixty -- I'm sorry.

24           THE COURT:  Paragraph 64.

25           MS. SWEENEY:  And 63.

```
 1              THE COURT:  Paragraph 63 should be removed.

 2              Paragraph 64, the injunction apparently was issued

 3    and made permanent and it will be allowed to stay in the

 4    PSR.

 5              Any other objections to the PSR from the defense?

 6              MS. SWEENEY:  No, Your Honor.

 7              THE COURT:  Has the Government had an opportunity

 8    to review the presentence report?

 9              MS. RICH:  Yes, I have, Your Honor.

10              THE COURT:  Any objection to its factual or legal

11    accuracy?

12              MS. RICH:  No, Your Honor.

13              THE COURT:  Mr. Alexander, have you read this

14    presentence report?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:  Are the facts in it true, sir, to the

17    best of your knowledge and belief?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  And have you had a chance to discuss

20    it with your lawyer and how the guidelines apply in your

21    case?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Has she answered all of your questions

24    to your satisfaction?

25              THE DEFENDANT:  Yes, Your Honor.
```

```
 1              THE COURT:  All right.  There being no objections
 2    other than the ones the Court has resolved, the Court adopts
 3    the presentence report as modified and adopts the guideline
 4    calculations, independently determining that those are
 5    accurate.
 6              The defendant has a total offense level of 19, a
 7    criminal history category of III.  The guidelines call for a
 8    term of incarceration of between 37 and 46 months.  There's
 9    a one to three year period of supervision.  Restitution does
10    not apply.  The fine range in this case is between 10,000
11    and $100,000, and there is a $200 special assessment.
12              Are there any victims in the courtroom who wish to
13    make any statements, from the Government?
14              You're muted.
15              MS. RICH:  I apologize, Your Honor.  Present in
16    the room with me is Officer Derek Hartmann, who is one of
17    the victims.  He's present, however he does not wish to make
18    a statement at this time.
19              Corporal Gerald Baker is actually in surgery this
20    morning, so he's unable to attend; however, he provided me
21    with a statement that he would like me to read to the Court.
22              THE COURT:  Any objection from the defense?
23              MS. SWEENEY:  No, Your Honor.
24              THE COURT:  And where is Officer Hartmann?  Is he
25    on screen?
```

1      MS. RICH:  He's standing right behind me right
2 now, Your Honor.
3      THE COURT:  Officer Hartmann, you have an
4 opportunity to make a statement on your own behalf.  Do you
5 wish to make a statement?
6      OFFICER HARTMANN:  No, ma'am.
7      THE COURT:  Thank you.
8      Yes, let me hear Corporal Baker's statement.
9      MS. RICH:  Thank you.
10      Corporal Baker states:  Good morning, Your Honor.
11 I apologize for not being able to attend.
12      I would like to start by stating the event that
13 took place the morning of July 6th, 2017 was life-changing
14 for many people, to include myself.  After that day I dealt
15 with much scrutiny, to include messages from a man named
16 James Alexander, whom is a man I have never met.
17      Mr. Alexander made many negative statements about
18 me on social media, which escalated to him messaging me
19 personally, stating I murdered his friend and that he wanted
20 to fight me.  Many messages were sent late in the evening,
21 which disrupted my sleep, and at no time did I respond to
22 him.  Mr. Alexander then began to message my friends and
23 family members, to include my sister, and tell them that
24 I murdered his friend, which grew more concerning and upset
25 my entire family.

1           I decided to file for an injunction for protection

2     against Mr. Alexander in an attempt to protect me and my

3     family.  I also decided to take further actions, after my

4     children begged me to do so, and sell my home of nine years,

5     which all of my children grew up in, and move to a different

6     location and redact my address from public record to add

7     more peace of mind for my family.

8           At the hearing for the injunction, in open court,

9     Mr. Alexander made statements that he indeed wanted to harm

10    me.  All of the steps I've made, to include getting a

11    protection order, selling my house, and hours of

12    conversation with friends and family on what steps to

13    protect themselves against Mr. Alexander have been

14    exhausting.  Once I learned Mr. Alexander was indicted, it

15    was a relief, and I would ask that he receive the highest

16    penalty available.

17          Thank you.

18          Corporal Gerald Baker, Plant City Police

19    Department.

20          THE COURT:  Thank you.

21          Does the defense wish to be heard further in

22    mitigation, and does the defendant wish to allocute, which

23    is his right?  Ms. Sweeney?

24          MS. SWEENEY:  Yes, Your Honor.  I'd like to first

25    have Ms. -- Mrs.  -- Ms. Dominguez, who is appearing by

```
 1   phone, to unmute and just address the Court briefly.
 2            Ms. Dominguez, could you please unmute.
 3            THE COURT:  Ms. Dominguez, can you take your phone
 4   off mute.
 5            COURTROOM DEPUTY:  Your Honor, I think that
 6   Ms. Dominguez may have to call back in.  Because she's
 7   calling in from a phone, once she's muted, she can't unmute
 8   herself, and I cannot unmute her.
 9            THE COURT:  Ms. Dominguez, if you can hear us,
10   would you please hang up your phone and call back in?  You
11   can't be unmuted once you mute your phone.
12            Can you text her at that number or call her at
13   that number that she --
14            MS. SWEENEY:  It looks like she has left the
15   screen, Your Honor.
16            Your Honor, if you would like, we can have Mr. --
17            THE COURT:  Just give it a minute, Ms. Sweeney.
18            MS. SWEENEY:  I'm sorry?
19            THE COURT:  Just give it a minute.
20            MS. SWEENEY:  Yes, Your Honor.  I'm sorry.  I was
21   just trying to be efficient for the Court.
22            COURTROOM DEPUTY:  Here she is, Your Honor.
23            THE COURT:  And what's her name, Ms. Sweeney?
24            MS. SWEENEY:  Ms. Dominguez.
25            THE COURT:  Can you hear the Court?
```

```
 1                MS. DOMINGUEZ:  Yes, ma'am.

 2                THE COURT:  Please raise your right hand.

 3                Is it raised?

 4                MS. DOMINGUEZ:  Yes, ma'am.  Yes, Your Honor.

 5                THE COURT:  Do you solemnly swear or affirm that

 6     the testimony and statements you will give to this Court are

 7     the truth, so help you God?

 8                MS. DOMINGUEZ:  Yes, Your Honor.

 9                THE COURT:  Would you like to make a statement on

10     behalf of Mr. Alexander?

11                MS. DOMINGUEZ:  Yes, Your Honor.

12                THE COURT:  What is your relation to

13     Mr. Alexander?

14                MS. DOMINGUEZ:  Son.

15                THE COURT:  He's your son?

16                MS. DOMINGUEZ:  Yes, Your Honor.

17                THE COURT:  And how long have you all lived

18     together, most recently?

19                MS. DOMINGUEZ:  Most recent?  All his life.

20                THE COURT:  He's always lived in your home?

21                MS. DOMINGUEZ:  Yes.

22                THE COURT:  Yes?

23                MS. DOMINGUEZ:  Can you hear me, Your Honor?

24                THE COURT:  I can hear you now.

25                Has he always lived in your home?
```

1          MS. DOMINGUEZ:  Yes, Your Honor.

2          THE COURT:  And you'd like to make a statement on

3    his behalf?

4          MS. DOMINGUEZ:  Yes, Your Honor.

5          THE COURT:  Is anyone there with you?

6          MS. DOMINGUEZ:  No, Your Honor, I'm by myself.

7          THE COURT:  All right.  Let me hear from you.

8          MS. DOMINGUEZ:  Okay.  In the past several years

9    my son James (inaudible) helps me clean house, sweeping and

10   mopping, vacuuming, doing dishes, cooking (James love to

11   cook), helps me with the cats, goes with me to the

12   laundromat, helps me with the laundry, (inaudible) six pound

13   bags of cat food, six pound bags of litter and water, as I

14   am (inaudible).

15         I was in two bad car accidents recently.  It is

16   very, very difficult for me to do all this by myself.

17   I need my son James to help care for me regarding the

18   situ -- accidents.  I am having issues (inaudible) --

19   caregiver.  My son James will always help and care for me,

20   no matter what it takes.  I am -- (inaudible) --

21   cardiologist --

22         THE COURT:  Ma'am, you're breaking up.  Are you

23   using a speaker phone or a hand phone?

24         MS. DOMINGUEZ:  I'm on a hand phone.

25         THE COURT:  You're breaking up from time to time.

```
 1              MS. DOMINGUEZ:  I was in two bad car accidents.
 2   It is very, very difficult for me to do all this by myself.
 3   I need my son James to help and care for me regarding these
 4   accidents.  I am (inaudible) issues.  My son James is my
 5   caregiver.  My son James will always care and help me, no
 6   matter what.
 7              I am waiting for a referral for a cardiologist.
 8   On October 14th I will be having a surgery procedure done on
 9   my back because of these accidents.  Since my son is my
10   caregiver, I need him with me to make sure I get home safe,
11   as I have nobody to help or care for me and it's very
12   difficult for me.  Please, Your Honor.  Thank you.
13              THE COURT:  Thank you.
14              Do you have any other children?
15              MS. DOMINGUEZ:  I do have a 28-year-old son, but
16   he is -- I don't ever talk to him.
17              THE COURT:  And that's your only other child?
18              MS. DOMINGUEZ:  Yes, I only have two boys.
19              THE COURT:  Do you have any siblings?
20              MS. DOMINGUEZ:  I have a sister, but everybody is
21   back home in California, where we're from.
22              THE COURT:  All right.  Thank you.
23              Ms. Sweeney --
24              MS. DOMINGUEZ:  You're welcome.
25              THE COURT:  -- do you have anything else?
```

```
1              MS. SWEENEY:  Yes.  I think Mr. -- prior to making
2   argument, I would like Mr. Alexander to allocute to the
3   Court, Your Honor.  He has indicated his desire to do so.
4              THE COURT:  Mr. Alexander, you'd like to make a
5   statement to the Court?
6              THE DEFENDANT:  Yes, Your Honor.  I would like to
7   apologize to my victims and that I regret what I did.  I've
8   learned my lesson and I will never do it again, Your Honor,
9   and I am the caregiver for my mom.
10             THE COURT:  Thank you.
11             Did you say something else after caregiver for
12  your mom?
13             THE DEFENDANT:  I said -- I'm trying to think.
14  No.  No, Your Honor.
15             THE COURT:  I can't hear you.
16             THE DEFENDANT:  I said no, Your Honor.
17             THE COURT:  All right.
18             Yes, ma'am.  Ms. Sweeney.
19             MS. SWEENEY:  Thank you, Your Honor.
20             Your Honor, just as -- you know we submitted our
21  sentencing memorandum, per the court order, as well as
22  Dr. McClain's psychological evaluation and a transcript from
23  the preliminary hearing.
24             There is a sentiment going around this country of
25  police shootings of unarmed citizenry, and it's outrageous
```

1   and illegal conduct, and it's a movement that's taken hold.

2   With the personal experience of Mr. Cervantes and his death,

3   Mr. Alexander experienced a wide range of reactions, his own

4   post -- PTSD of bullying and physical and emotional abuse

5   came flashing back, his sense of justice of being a

6   protector was implicated, and I think what becomes critical

7   here is Dr. McClain's report of how the undiagnosed autism,

8   it -- he became single-minded and spoke out against

9   law enforcement and in particular these two Plant City

10  police officers, but he went too far.  He did target these

11  two officers.

12          He -- I will say though, I don't believe --

13  I thought -- I would disagree with Corporal Baker to this

14  extent.  I believe what Mr. Alexander said during the

15  hearing of the excerpts that I've seen is that he made the

16  threats and he was angry.  I've been -- there -- and what's

17  important, I think, for the Court to see in looking at

18  fashioning a sentence is since that injunction he's never

19  violated it, he -- the Court gave him orders, he followed

20  them, so he can comport his behavior.

21          He made some threats to these particular officers.

22  Most of his statements though, I would suggest to the Court,

23  contained in the offense conduct are free speech, not

24  directed at any particular person, but he never tried to

25  find out where they patrol, he never went to their homes, he

1  never tried to find their phone numbers, he never showed up

2  at the police station, he didn't try to find out where their

3  kids went to school or whether or not he had schools.

4  So I do think that in the context of this we can show that

5  there -- that they were words, even though they had impact

6  on the victims, and I'm not in any way trying to diminish

7  that.

8          I think for his age, his disability and his

9  contact -- again, I think we can show that he can comply

10 with rules.  He's -- in the week before his arrest, weeks --

11 they'd been looking at him for two to three years.  They

12 mounted surveillance cameras to the utility poles that faced

13 his house.  They never found a single criminal act.  There

14 was never any overt violence that was attempted here in this

15 case.  And so I think it's -- what's compelling, again, in

16 looking at Dr. McClain's report, is he can be taught coping

17 techniques and behaviors that are in compliance with the law

18 and the societal norms, but that requires intensive

19 assistance and therapy, as outlined by Dr. McClain.

20         Sending him to prison is a substantial hardship on

21 his family.  As you've heard, he's his mother's sole

22 caretaker.

23         We know that the brain development of persons

24 under -- at 25 and under is still maturing, and all of these

25 crimes were committed by the time he reached 25, and as

1   noted by Probation, they even recommended a variance due to

2   a long history of bullying, physical abuse and mental health

3   issues.

4          So we'd ask for a sentence of time served followed

5   by three years of supervised release as the best way to

6   protect this community and aid in his rehabilitation,

7   Your Honor.

8          THE COURT:  Ms. Sweeney, it seems to me from this

9   record that the defendant was approached a couple of times

10  and asked to stop the conduct but he continued.  Can you

11  speak to that?

12         MS. SWEENEY:  Yes, Your Honor, I can.  And I'm

13  going to go and rely on Dr. -- you're right, he was.

14         I'm going to rely, again, on Dr. McClain's report

15  of how the undiagnosed autism spectrum kept him obsessed and

16  single-minded on things and that with treatment that can

17  change.  As we know, people on the spectrum are mostly

18  law-abiding, but without treatment, she explains why this

19  could have happened.

20         I would, again, relate to the Court that once he

21  was instructed by the Court, he didn't violate the

22  injunction, and that to me is pretty compelling.

23         THE COURT:  Ms. Rich, do you have the transcript

24  of the proceeding at which Corporal Baker says he continued

25  to make threats?

```
 1              MS. RICH:  I'm checking, Your Honor, to see if
 2    I can pull that up.
 3              THE COURT:  And were Corporal Baker and Officer
 4    Hartmann involved in this shooting about which Mr. Alexander
 5    was obsessing?
 6              MS. SWEENEY:  Yes, Your Honor, they were the
 7    shooters, but they were found to be justified in the
 8    shooting.
 9              THE COURT:  Ms. Sweeney, do you have the report,
10    or the transcript?
11              MS. SWEENEY:  No, I do not, Your Honor.  I don't
12    know if it was in --
13              THE COURT:  Thank you, Ms. Sweeney.  Yes or no is
14    the answer.
15              MS. SWEENEY:  No, Your Honor, I do not.
16              THE COURT:  Does Probation have it?  Ms. Martinez,
17    do you have it?
18              PROBATION:  No, Your Honor.
19              MS. RICH:  And, Your Honor, I don't believe I have
20    it.  If I recall it, I believe what I would have had, which
21    would have been produced to the defense, would have been an
22    audio recording of the hearing but not a transcription of
23    it.
24              THE COURT:  Did you listen to it?
25              MS. RICH:  Excuse me, Your Honor?
```

1          THE COURT:  Did you listen to the audio?

2          MS. RICH:  I -- no, I have not listened to the

3    audio.  I've relied on what I've been told by my

4    law enforcement agents transpired in that hearing.

5          THE COURT:  Well, do you know whether the

6    statement that he makes, that he continued to make threats

7    at the hearing, is true or false?

8          MS. RICH:  One moment, Your Honor.

9          My understanding of the nature of the statement --

10   and I'm paraphrasing, Your Honor -- was that he would beat

11   up an officer.  I don't believe his statement was that he

12   would kill an officer, at that injunction hearing.  I know

13   he was admonished by the Court to not continue with threats

14   against law enforcement.

15         THE COURT:  Read the witness's statement in that

16   regard again.  I thought he said he continued to make

17   threats even at the hearing.

18         MS. RICH:  Yes, Your Honor.  One moment.

19         The portion of the statement that I believe

20   Your Honor is referring to from Corporal Baker says that at

21   the hearing for the injunction in open court Mr. Alexander

22   made statements that he indeed wanted to harm me.

23         THE COURT:  Was Officer Hartmann at that hearing?

24         MS. RICH:  He was not, Your Honor.  The threats

25   against Officer Hartmann began after the permanent

```
1    injunction was entered on behalf of Corporal Baker.
2             THE COURT:  So, Ms. Sweeney, when you say he never
3    violated the injunction, you mean against Officer Baker, but
4    then he started making threats against Officer Hartmann?
5             MS. SWEENEY:  I -- he never violated the
6    injunction against Officer Baker.  He made one threat to
7    Mr. Hartmann.
8             MS. RICH:  And, Your Honor, if I may, paragraph 12
9    of the presentence report addresses the hearing on the
10   temporary injunction, and the quotes that are included in
11   paragraph 12 state that when asked by the Court if he made
12   death threats to the Plant City Police Department, Alexander
13   said, quote, yes, and further stated, quote, well, I just --
14   to be honest, Your Honor, I want justice for my friend's
15   murder and I want both of them locked away, end quote.
16   The Judge cautioned Alexander about contacting Gerald Baker
17   any further.
18            THE COURT:  Where does that information derive
19   from?  Probation doesn't have the transcript.  We don't have
20   the transcript.  The defense doesn't have the transcript.
21   Where is it coming from?
22            MS. RICH:  I believe that was information -- well,
23   I also have the detective who led the investigation and
24   I believe that was included in his police report.  He does
25   not have the transcript, Your Honor.
```

1          THE COURT:  So how does he make statements about

2     what happened in a court hearing that he didn't participate

3     in?

4          MS. RICH:  Detective Sanchez indicates that at one

5     point he did listen to the audio of the permanent -- the

6     hearing on the temporary injunction.  He has not listened to

7     it recently, but he did listen to it as part of his

8     investigation.

9          THE COURT:  So does Officer Agent Sanchez know

10    whether Mr. Alexander did or did not make a threat or

11    indicate that he wanted to harm Officer Baker at that

12    hearing?

13         MS. RICH:  He's indicated that he does not recall.

14         THE COURT:  And the date of that hearing was

15    June 19th?

16         MS. RICH:  Of 2018, Your Honor.

17         THE COURT:  That was the hearing date or that was

18    the TRO file date?

19         MS. RICH:  June 19th, 2018 was the date of the

20    hearing.

21         THE COURT:  Anything else anyone else wishes to

22    add, Ms. Sweeney?

23         MS. SWEENEY:  No, Your Honor.  Thank you.

24         THE COURT:  Ms. Rich?

25         MS. RICH:  Your Honor, as you are aware, the

1    Government has submitted a sentencing memorandum in this

2    case, and I won't go through all of the factual details I've

3    included, but I would like to emphasize the point that the

4    defendant did not send one threatening message, he didn't

5    post one threatening comment on a Facebook page, this was an

6    individual who was absolutely fixated on threatening and

7    harming law enforcement, as evidenced by his exhaustive

8    posts online as well as his direct threats to

9    Officer Hartmann and Corporal Baker.  For over two years

10   this defendant trolled the internet looking for ways to

11   threaten law enforcement and to go after specifically these

12   two law enforcement victims.

13           As outlined in my sentencing memorandum and

14   addressed here this morning, these threats were taken

15   extremely seriously by Corporal Baker and Officer Hartmann.

16   As Corporal Baker stated in his written statement to the

17   Court, he moved his family out of his residence of nine

18   years because he was so concerned about his family's safety.

19   Additionally, he sought this injunction against the

20   defendant.

21           There's been some discussion this morning about

22   whether or not the defendant violated that permanent

23   injunction, and, no, the defendant did not specifically

24   target Corporal Baker following the entry of that permanent

25   injunction, but he did not stop threatening law enforcement,

1  he just redirected his attention to Officer Hartmann and

2  began threatening Officer Hartmann directly.

3          So this defendant started his threats in October

4  of 2017.  In -- I'm sorry, yes, he started his threats in

5  October of 2017.  Shortly after he started making threats to

6  law enforcement, officers came to his residence and spoke to

7  him about those threats.  He admitted to making the threats

8  but he didn't stop there, he continued threatening

9  law enforcement, and his threats escalated to the point

10 where he then began to target Corporal Baker directly and

11 family members.  He sought out family members on Facebook to

12 also threatened Corporal Baker.

13         In June of 2018, as we discussed this morning, he

14 was present in a courtroom where a judge admonished him for

15 these threats and told him that he should stop making these

16 threats.  Still the defendant continued to threaten

17 law enforcement.  No, he didn't threaten Corporal Hartmann

18 after that date; however, in January of 2019 he targeted

19 Officer Hartmann.  So this defendant has not been deterred

20 by the Court admonishing him, he has not been deterred by

21 law enforcement visits to his home.  In fact, his behavior

22 has only escalated.

23         A guideline sentence in this case is necessary, in

24 the Government's opinion, due to the seriousness of the

25 offense, the need to deter future criminal activity, the

1    need to promote respect for the law and the importance of

2    protecting the public, including our law enforcement

3    community, Your Honor.

4           THE COURT:  All right.  You made a misstatement,

5    I think.  You said, no, he didn't threaten Corporal Hartmann

6    after that date; however, he targeted Officer Hartmann.  You

7    meant in the first Officer Baker?

8           MS. RICH:  I meant he did not continue to threaten

9    Corporal Baker, he turned his attention to Officer Hartmann.

10   Yes, Your Honor.

11          THE COURT:  And Ms. Dominguez, is it?

12          MS. DOMINGUEZ:  Yes, ma'am.  Yes, Your Honor.

13          THE COURT:  Why isn't your son on some sort of

14   medication or treatment for his conditions?

15          MS. DOMINGUEZ:  Because I have – I can't afford

16   it.  If I had insurance or if I can take him someplace to

17   get him help, I would do it.  I just need someone to tell me

18   where to go take him and a phone number and address and all

19   that and I will do it in a heartbeat.  I want him to get

20   help and his disabilities taken away.  He hates it, he hates

21   having these disabilities, and he wants to go to college,

22   get his GED.

23          THE COURT:  Do you have a disability?

24          MS. DOMINGUEZ:  Excuse me, Your Honor?

25          THE COURT:  Do you have an official disability,

1   like a Social Security designated disability?

2            MS. DOMINGUEZ:  No, Your Honor, I don't.

3            THE COURT:  Do you work?

4            MS. DOMINGUEZ:  Excuse me, Your Honor?

5            THE COURT:  Do you work?

6            MS. DOMINGUEZ:  No, Your Honor, I don't.

7            THE COURT:  How do you support yourself?

8            MS. DOMINGUEZ:  I get alimony, but these two car

9   accidents I was in has affected me to get a job.

10            THE COURT:  Were you working before the accidents?

11            MS. DOMINGUEZ:  No, Your Honor.  I was not looking

12   for work.

13            THE COURT:  Have you ever worked?

14            MS. DOMINGUEZ:  Yes, Your Honor.  2012 -- 2011 and

15   '12 I worked at Plant City High School in the kitchen.

16   I was a cook.

17            MS. SWEENEY:  Your Honor, it's also my

18   understanding that Ms. Dominguez has been a former TSA

19   officer.

20            MS. DOMINGUEZ:  Yes.

21            THE COURT:  When was that?

22            MS. DOMINGUEZ:  September of '88.  I worked

23   four years with Wackenhut, two years with the limited

24   airport security, like the one you put your bags through the

25   x-ray machine and walk through -- (inaudible).

```
1              THE COURT:  This is '88?

2              MS. DOMINGUEZ:  Excuse me, Your Honor?

3              THE COURT:  In 1988?

4              MS. DOMINGUEZ:  Yes, Your Honor.

5              THE COURT:  All right.  Anything further from the

6  Government or the defense?

7              MS. SWEENEY:  No, Your Honor.

8              MS. RICH:  No, Your Honor.

9              THE COURT:  Mr. Alexander, we're doing this

10 hearing by videoconference under the CARES Act.  It allows

11 the Court to hold hearings, sentencing hearings, by video.

12 This is to protect you from the risk of catching the

13 COVID-19 virus and to protect everyone in the courtroom from

14 the risk of COVID-19 and to ensure that your sentencing is

15 not delayed unnecessarily.  Has your lawyer discussed with

16 you the fact that we're holding this hearing under the

17 CARES Act by videoconference?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And did you agree to have the hearing

20 held by videoconference?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Did anyone threaten you to get you to

23 have the hearing held by videoconference?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Did anyone promise you anything to get
```

1    you to hold the hearing by videoconference?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  You understand that in a normal

4    circumstance you would have been allowed to come to court

5    and been seen in person for this hearing?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Have you been able to hear and

8    understand everything that has been said at this hearing?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Does the Government agree that holding

11   the hearing by videoconference protects the public and

12   serves the interests of justice and that justice would be

13   harmed if we continued to delay these proceedings?

14             MS. RICH:  Yes, Your Honor.

15             THE COURT:  Does the defense also agree?

16             MS. SWEENEY:  Yes, Your Honor.

17             THE COURT:  All right.  The Court so holds that

18   this matter needs to be held by videoconference to protect

19   against the risk of injury or disease spreading, to protect

20   the jail and to protect the courtroom and the persons in it,

21   and that justice would be harmed if we continued to delay

22   these proceedings, allowing the defendant to be in a

23   transient facility rather than in a place of incarceration.

24             The Court has heard everything the parties have

25   said.  I've reviewed the background and history of this

1    case.  I have looked at the psychological report provided by

2    the doctors as submitted by the defense.  I've considered

3    the statements of the victims and the arguments of the

4    parties as well as the presentence report.

5              In accordance therewith, the Court agrees that the

6    defendant has a total offense level of 19, he has a criminal

7    history category of III.  The guidelines call for a term of

8    incarceration of between 37 and 46 months, there's a one to

9    three year period of supervised release, the fine range is

10   10,000 to $100,000 and there's a $200 special assessment.

11             In accordance with the Court's findings, the Court

12   concludes that based upon Title 18, United States Code,

13   Section 3551 and 3553, it is the judgment of this Court that

14   this defendant, James Alexander, is hereby committed to the

15   custody of the Bureau of Prisons to be incarcerated for a

16   term of 37 months.  This term consists of 37 months as to

17   each count, to run concurrently.

18             Upon release from prison the defendant will serve

19   a three year term of supervised release as to each count,

20   running concurrently, and while on supervised release he

21   will comply with the mandatory and standard conditions

22   adopted by the Middle District of Florida and in addition

23   certain special conditions.

24             The defendant will participate in a drug abuse

25   program, pay the costs of that as directed if he can.  He

1    will participate in a mental health treatment program, pay

2    the costs of that if he can.

3            He must not communicate or otherwise interact with

4    the victims in this case, G.B. or G.B.'s family members or

5    D.H. or D.H.'s family members, either directly or

6    indirectly, using any means of communication.  He will not

7    make any other threats to law enforcement to cause them

8    physical or emotional harm during the period of his

9    supervised release.  If he makes such threats, those will be

10   considered violations of terms of supervised release and he

11   can be incarcerated for doing so.

12           If you are living in a residence after your period

13   of incarceration, you must agree to have that residence

14   searched.  Your person will be searchable, your place of

15   business, any storage unit or computer or vehicle will be

16   subject to search to ensure that you are complying with

17   terms and conditions, where there is a reasonable suspicion

18   of violations of terms and conditions of supervised release.

19           You are a convicted felon, so you must cooperate

20   in the collection of DNA as directed.

21           You will refrain from unlawful use of a controlled

22   substance and submit to up to 104 drug tests per year.

23           The fine in this case is waived.

24           The Government has not sought forfeiture, has it,

25   Ms. Rich?

1        MS. RICH:  We have, Your Honor.  There was a

2    preliminary order of forfeiture that we would ask be made

3    final at this time.

4        THE COURT:  What is the forfeiture?  I don't have

5    it pulled up in front of me.

6        MS. RICH:  One moment, Your Honor.

7        There was an iPhone 7 with serial number D, as in

8    dog, X --

9        THE COURT:  You don't have to read the serial

10   numbers.  An iPhone 7?

11       MS. RICH:  And a --

12       THE COURT:  And what else?

13       MS. RICH:  A GoPro.

14       THE COURT:  What's the docket for that motion and

15   preliminary order?

16       Ms. Sweeney, does the defense oppose the

17   Government's late motion for forfeiture of these two assets?

18       MS. SWEENEY:  It does, Your Honor.  We do, and for

19   the following reasons.  I will admit that in the factual

20   basis we did say that the social media where the threats

21   were posted involved the iPhone, so my client wanted me to

22   object to that anyway, but this GoPro has had nothing to do

23   with the facilitation of this crime.  There is a video from

24   that GoPro that just shows my client walking around the

25   street, he points out a police officer's house and says a

1    pig lives there, but there is absolutely no connection

2    between this conviction and the GoPro.

3            THE COURT:  Counsel, we don't have a motion and

4    there is a challenge.  What is the basis for the claim of

5    forfeiture of either item and why wasn't a motion filed?

6            MS. RICH:  Your Honor, I apologize for the motion

7    not being filed.  I will check with our asset forfeiture

8    department to see --

9            THE COURT:  All right.  There will be no

10   forfeiture.  Please return the items to the defense.

11           MS. RICH:  Yes, Your Honor.

12           THE COURT:  The defendant is required to pay the

13   special assessment of $200, which is due immediately.

14           Is the defendant requesting special placement,

15   Ms. Sweeney?

16           MS. SWEENEY:  Yes, Your Honor, Coleman, with a

17   recommendation as to GED classes, a job and vocational

18   training.

19           THE COURT:  All right.  The Court would recommend

20   that the defendant be placed at Coleman so he can be at

21   reasonable proximity to his family.  The Court would

22   additionally direct that the defendant undertake to get his

23   GED and that he get vocational training.

24           Mr. Alexander, if you're unsuccessful during the

25   course of your incarceration in getting your GED, you will

1   be directed as part of your order of supervised release to

2   continue to seek and to obtain your GED and to be gainfully

3   employed.

4          Having considered the advisory sentencing

5   guidelines and all of the factors identified therein, the

6   Court finds that the sentence is sufficient but not greater

7   than necessary to comply with the statutory purposes of

8   sentencing.  For the record, the Court did consider the

9   defendant's emotional and mental limitations as set forth in

10   the psychological report.  I would have sentenced him to a

11   higher range than the guidelines perhaps, but I am giving

12   him some dispensation for that, but I am also considering

13   the fact that law enforcement attempted to work with this

14   defendant to get him to stop these threats before it

15   escalated to a point of charging him, they instead proceeded

16   first to get an injunction, and when that injunction was put

17   in place, the defendant continued his threatening conduct

18   and located a different target.  So he was given an

19   opportunity to stop his conduct and he declined to do so.

20          The Court having pronounced sentence, does counsel

21   for the defense object to the sentence or the manner in

22   which it was pronounced?

23          MS. SWEENEY:  Your Honor, for our record, I would

24   object to substantially and procedurally an unreasonable

25   sentence.

```
 1              THE COURT:  And does the Government object to the
 2   sentence or the manner in which it was pronounced?
 3              MS. RICH:  No, Your Honor.
 4              THE COURT:  The defendant will receive credit for
 5   all time he has served incarcerated up to the date of this
 6   hearing.  He is remanded to the custody of the United States
 7   Marshal to await designation by the BOP.
 8              Was this a straight plea, Ms. Sweeney?
 9              MS. SWEENEY:  Yes, Your Honor, it was.
10              THE COURT:  You have 14 days from today's date to
11   file any appeal from this sentence.  If you fail to appeal
12   within the 14 day period, it will be a permanent waiver of
13   any right of appeal.  The Government, of course, is free to
14   appeal if it chooses, and if you cannot afford an attorney,
15   Mr. Alexander, the Court will continue to afford you the
16   right to an attorney for the purposes of taking and
17   defending an appeal, and the Court will direct the Clerk of
18   the Court to accept any notice of appeal that is filed
19   without fee.
20              Mr. Alexander, I know you have some psychological
21   and mental and emotional limitations, and I know that you've
22   suffered from the loss of your friend, but you cannot make
23   threats against law enforcement, and when you are released
24   from incarceration you must not make any threats to
25   law enforcement.  While you're incarcerated, if you're using
```

1  the computer, you must not make any threats to

2  law enforcement.  If you do, you will be arrested again.  Do

3  you understand that?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And you will be arrested and charged

6  after having been convicted of a felony and you could be

7  given harsher penalties just because of the prior felony

8  conviction.  Do you understand that?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Is there anything further in this

11  matter from the Government?

12          MS. RICH:  No, Your Honor.

13          THE COURT:  From the defense?

14          MS. SWEENEY:  Your Honor, does the Court have time

15  to allow me to go into a breakout room following adjournment

16  with my client?

17          THE COURT:  Ms. Biron, do we have the room for any

18  additional time?

19          MS. RICH:  Yes, I can -- I can allow them to have

20  the room.

21          THE COURT:  All right.  We will switch you to the

22  room now and then I will leave the meeting.

23          MS. SWEENEY:  Thank you, Your Honor.

24          THE COURT:  Thank you.  We're dismissed.

25           (Proceedings concluded at 11:03 a.m.)

```
1              C E R T I F I C A T E

2

3           This is to certify that the foregoing transcript

4   of proceedings taken in a sentencing hearing in the United

5   States District Court is a true and accurate transcript of

6   the proceedings taken by me in machine shorthand and

7   transcribed by computer under my supervision, this the 23rd

8   day of November, 2020.

9

10

11                              /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```